UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 2:20-CR-148-PPS |
| ) | |
| TERRANCE BROWN, ) | |
| ) | |
| Defendant. ) | |

### **OPINION AND ORDER**

Terrance Brown was charged with robbing the First Midwest Bank in Griffith, Indiana. [DE 13.] The case against him was strong. Bank security videos showed Brown approaching a bank teller, telling them he was robbing the bank, and then jumping over the teller counter to grab cash from a cash machine and the drive-thru teller cash drawers. [DE 76 at ¶5.] In total, Brown made off with $12,724 in cash. [*Id.*] Investigators used surveillance footage of Brown's vehicle leaving the scene and recovered his fingerprint and palm print from the teller counter to track down Brown and arrest him five days later. [*Id.* at ¶¶6–9.]

Brown pleaded not guilty at his arraignment on November 12, 2020. [DE 19.] After a breakdown in his relationship with a private attorney, the Court appointed Federal Community Defender Peter Boyles as Brown's counsel on May 18, 2021. [DE 34.] During the final pretrial conference on September 17, 2021, Brown (as he had in written correspondence to the Court) indicated he would like to waive his right to a jury trial and proceed to a bench trial. [DE 60.] Attorney Boyles stated on the record:

"my advice to Mr. Brown is not to proceed with a bench trial. I understand he's requesting a bench trial, but that is not something I would recommend to him." [DE 97 at 5.] The Court explained the nature of the jury trial system and Brown's waiver of that right. [*Id.* at 6–10.] Brown then said he knowingly and intentionally waived his right to a jury trial. [*Id.* at 11.]

I held a three-day bench trial on September 27, 28, and October 4, 2021. [DE 66; DE 67; DE 68.] At the conclusion of the bench trial, I returned a verdict of guilty. [DE 68.] I sentenced Brown on January 27, 2022, to 180 months of incarceration, two years of supervised release, and restitution of $12,724 to First Midwest Bank. [DE 83; DE 84.] Brown appealed [DE 86], and the Seventh Circuit appointed CJA Attorney Vanessa K. Eisenmann to represent him on his appeal [DE 105]. On appeal, as he had during sentencing, Brown contested my determination that he was a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. Specifically, he appealed whether his 2010 conviction for Illinois vehicular hijacking constituted a crime of violence, which, along with a separate conviction, subjected him to the career offender sentencing enhancement. The Seventh Circuit affirmed Brown's sentence on July 21, 2023. [DE 110; *United States v. Brown*, 74 F.4th 527 (7th Cir. 2023), *cert denied*, 144 S. Ct. 119 (2024).] The Supreme Court denied Brown's petition for writ of certiorari on February 26, 2024. *Id.*

In what would become a pattern, after his unsuccessful appeal Brown began to file miscellaneous letters and motions with this Court. This led to confusion concerning Brown's filing of a motion to vacate under 28 U.S.C. § 2255(a). As I explained in an October 8, 2024, Order, Brown in May 2024 informed the Court that a third party would

2

soon file his § 2255 motion. [DE 141.] That did not happen. Brown wrote the Court in August 2024 asking for a status update on his § 2255 motion. Evidently, Brown was of the mistaken impression that someone had filed the motion on his behalf. (Again, no one had.) Then, in a September 2024 letter Brown again insisted that a third-party had filed his § 2255 motion in June 2024. [*Id.*]

In all events, in October 2024 Brown eventually filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. [DE 140.] This petition is timely and ripe for review. In support of his motion, Brown has filed a swath of letters, memorandums, and similar petitions. I endeavor to consider all materials before the Court, though I note that Brown has made a mess of the docket and the record for his motion. In this opinion and order I also consider Brown's recent motions filed under Rule 46(c) of the Federal Rules of Criminal Procedure and under 28 U.S.C. § 2284. For the reasons explained below, Brown's motions are denied.

**Legal Standard**

Section 2255(a) allows a prisoner who has been sentenced to return to the court in which he was convicted and request his release on the grounds that his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A petitioner seeking relief under § 2255 faces a tall order. Indeed, such relief is only available "in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Harris v. United States*, 13 F.4th 623, 627 (7th Cir. 2021) (quoting *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014)); *see also Coleman v.*

*United States*, 79 F.4th 822, 826 (7th Cir. 2023) (describing relief under § 2255 as an "extraordinary remedy and therefore only available in limited circumstances") (citation omitted).

## Discussion

Brown asserts eleven grounds for relief. I begin with Brown's various claims of ineffective assistance of counsel that he says occurred before, during, and after trial. Much of the discussion in this first section on ineffective assistance of counsel is relevant to Brown's additional assertions of evidentiary and other errors.

### I. Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the assistance of counsel for his defense. U.S. Const. amend. VI. Here, Brown is requesting relief under § 2255 claiming that he was denied his Sixth Amendment right to the effective assistance of counsel. When reviewing a § 2255 motion claiming ineffective assistance of counsel, I evaluate the claim using the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) ("Generally, claims of ineffective assistance of counsel are evaluated under a two-prong analysis announced in *Strickland*.").

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Under *Strickland*, a claimant must prove (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient

performance prejudiced the defendant. *McDowell*, 497 F.3d at 761. If the petitioner fails to illustrate that either prong of the test is satisfied, there is no need for me to evaluate the other prong. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) ("A defendant's failure to satisfy either prong is fatal to his claim.").

When considering the first prong of *Strickland* — attorney performance — I am required to take a deferential approach with respect to the decisions the attorney made with the underlying assumption being that counsel's conduct falls within the wide range of reasonable professional assistance. *See United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Jordan v. Hepp*, 831 F.3d 837, 846 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690). For me to decide that counsel's representation was inadequate, counsel's representation must have fallen "below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citation omitted). Making a showing that counsel's representation was constitutionally inadequate is a steep hill to climb. *See Jordan*, 831 F.3d at 846.

As for the second prong, to make a showing that counsel's inadequate representation led to prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lee v. Galloway*, 106 F.4th 668, 673 (7th Cir. 2024) (quoting *Strickland*, 466 U.S. at 694). "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Gilbreath v. Winkleski*, 21 F.4th 965, 989 (7th Cir. 2021)

5

(citation omitted). Instead, counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *United States v. Hise*, 65 F.4th 905, 909 (7th Cir. 2023) (citation omitted).

Brown claims ineffective assistance of both his trial and his appellate counsel. Brown makes several vague statements about the performance of his trial counsel. He mentions the discussion on the record at his September 17, 2021, final pretrial conference concerning proceeding to a bench trial, the use and nonuse of certain evidence, his counsel's assignment to him eight months before sentencing, and the general diligence of his trial counsel. Many of these allegations are devoid of detail or explanation. As the government notes in response, perfunctory and underdeveloped arguments unsupported by legal authority are waived. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012). Despite this, I will try my best to parse and analyze each of Brown's arguments.

Concerning the September 17, 2021, final pretrial conference allegation, it is not at all clear to the Court what error Brown asserts by alleging "pretrial debating on the effectiveness of counsel . . . due to consultation planning errors of strategy." [DE 147 at 7.] At this hearing, the Court explained the right to jury trial and over his own counsel's advice Brown decided to waive that right. At the hearing, Brown said he "wrote the courts" and received earlier correspondence that he could not proceed to a bench trial, but I am just as confused with this comment now as I was during the September 2021 hearing. [DE 97 at 8–9.] I provided an opportunity for Brown to waive his right to jury

6

trial, and he did. [*Id.* at 11.] I'm left with Brown's out of context allegation during his final pretrial conference of Sixth and Fourth Amendment violations, but this occurred smack in the middle of my efforts to explain and gauge the knowing and voluntary waiver of Brown's right to jury trial. [*Id.* at 9–10.] On the whole, these allegations are underdeveloped, and their significance is unexplained by Brown. What's more, I cannot discern how this exchange could have possibly prejudiced Brown's trial or demonstrated ineffective assistance of counsel.

Next, Brown says "[e]vidence submitted for Rule 33 counsel should have used at trial that was available." [DE 147 at 7.] In the absence of any explanation by Brown of what this evidence was or its significance, his argument is just too underdeveloped and is therefore waived. *See Karr v. Sevier*, 29 F.4th 873, 884 (7th Cir. 2022) (affirming the denial of defendant's § 2254 motion based on defaulted claims which were "vague, conclusory, or both.").

Brown says next that his counsel was not diligent in persuading the Court that he was not a career offender. I will discuss in a later section the substance of Brown's argument. But for now, it is enough to say that there is no conceivable way his counsel was ineffective in this regard. This is because Attorney Boyles (Brown's trial counsel) argued extensively at sentencing that Brown was not a career offender. The fact that he was ultimately unsuccessful is, on its own, not a basis to show that Attorney Boyles was constitutionally ineffective. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'") (quoting *Strickland*, 466 U.S. at 689).

7

Moreover, Brown's complaint that his counsel was only appointed 8 months prior to sentencing is lost on me. That was more than sufficient time to prepare Brown's defense and effectively represent him at trial and at sentencing. In sum, the ineffective assistance of counsel claims listed as ground two for relief in Brown's motion are underdeveloped and lack any showing of either element of the *Strickland* test.

Much of what Brown alleges as ineffective assistance of counsel in his second ground for relief is reasserted as his ninth and tenth grounds for relief, in which he asserts violations of his Sixth Amendment rights. For example, Brown vaguely complains of "producing the necessary FRCP Rule 33 material" and adds that his trial counsel lacked diligence in accumulating unexplained exculpatory evidence. [DE 147 at 15.] The Court is unable to discern Brown's other allegations in these stated grounds for relief, such as his comment: "[e]ven after discovery tendered, there was no differential in plea agreement. Miscarriages of such deter pleas of guilt even if it is only to get plea agreement/responsibility points." [*Id.*] Frankly, I have no idea what Brown is saying here. Brown also takes issue with the presentation of certain evidence he says was inadmissible, [*id.* at 15–16], but I will discuss these arguments later in a section dedicated to evaluating the merits of Brown's evidentiary claims.

Finally, Brown seems to suggest the government prosecutor defamed his character during trial and at sentencing. [*Id.* at 16.] I'm not sure what Brown is referring to here, but the government's presentation at trial and sentencing was entirely professional and appropriate; the government was entitled to discuss the relevance of Brown's criminal history to aid the Court in determining an appropriate sentence. Also

8

left unexplained is how this has to do with the performance of Brown's counsel, but I will assume Brown takes issue with his attorney's lack of objection to the government's remarks concerning his criminal history and character. But as discussed above, Brown's trial attorney objected to his designation as a career offender and presented a constitutionally adequate defense and presentation at trial and sentencing. Brown offers no specifics that suggest conduct that fell below an objective standard of reasonableness. Brown's petition presents no basis for a finding that his counsel rendered constitutionally inadequate performance.

Finally, as it relates to claims of ineffective assistance of counsel, Brown argues his appellate counsel was constitutionally deficient. Attorney Vanessa Eisenmann, appointed as CJA Counsel, represented Brown in his appeal to the Seventh Circuit. [DE 105.] Brown complains that Eisenmann appealed only one of his two prior convictions that formed the basis for his career offender designation and did not raise the numerous evidentiary arguments Brown now asserts. I will discuss below Brown's various evidentiary objections as they relate to any decision by Eisenmann not to appeal them. As for the prior conviction that was not challenged on appeal, it was Brown's 2019 Indiana conviction for strangulation. At sentencing, I found that crime to be a crime of violence. Eisenmann chose not to challenge that finding on appeal, and she did so for good reason: Seventh Circuit precedent clearly foreclosed the argument. In *United States v. Mancillas*, the Seventh Circuit considered the 2007 version of Indiana's strangulation statute, Ind. Code § 35-42-2-9, and concluded: "Indiana's crime of strangulation 'has as an element the use, attempted use, or threatened use of physical force against the

9

person of another,' [so] it is a 'crime of violence' for purposes of the Sentencing Guidelines." 88 F.3d 297, 304 (7th Cir. 2018) (citation omitted). Brown was convicted in 2019 under a modified version of this statute, but it did not change the key elements or clear conclusion of the Seventh Circuit in *Mancillas*. Any appeal on this basis would have been plainly frivolous, and Brown's appellate counsel had no duty to make losing arguments. *See Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005). Brown has therefore failed to show either deficient performance or prejudice by his appellate counsel.

## II. Career Offender Designation

As just discussed, closely related to Brown's ineffective assistance of counsel claim based on his appellate counsel is his challenge to the Court's determination at sentencing that Brown was a career offender. Specifically, Brown argues his "prior convictions were not upheld to the applicable case law and statutes of conviction in which defendant was sentenced under for prior offenses, referencing defendant was also sentenced to probation for one offense used to enhance federal sentence." [DE 147 at 6.] He also says an "enhancement disbarred [him] from later 821 Amendment." [*Id.*] These allegations are unclear, but I begin by addressing Brown's argument to the extent he claims his two prior convictions were improperly considered "crimes of violence."

Under the U.S. Sentencing Guidelines, a defendant is deemed a "career offender" if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of

>conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The Sentencing Guidelines define a "crime of violence", as relevant here, as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" § 4B1.2(a)(1). A defendant who has been determined a "career offender" is then subject to an elevated base offense level when calculating their guideline sentencing range.

Brown's argument that he was improperly determined to be a career offender is wholly without merit. On appeal, the Seventh Circuit explicitly affirmed this Court's determination that Brown's 2010 Illinois vehicular hijacking conviction constituted a crime of violence for purposes of § 4B1.2(a)(1). *See Brown*, 74 F.4th at 528–33. He has fully exhausted this issue and cannot now assert it again in the form of a § 2255 motion. And as discussed above, the Seventh Circuit reached the same conclusion for the second of Brown's two prior relevant convictions for strangulation under Indiana law. *See Mancillas*, 88 F.3d at 304.

Brown's argument that he was sentenced to probation for one offense relevant to the career offender designation is neither here nor there. Brown seems to reference his Indiana strangulation conviction, for which he received a suspended 2.5-year term of imprisonment to be served on probation. [DE 76 at ¶33.] But as the government notes, the type or length of the sentence is not a factor in a career offender designation under § 4B1.1(a). The crime of strangulation under Indiana law is either a Level 5 or 6 felony, *see*

Ind. Code. § 35-42-2-9, which plainly satisfies the third element of a career offender designation that requires each relevant prior conviction be for a felony offense. Finally, Brown's argument that his sentencing range enhancement barred him from "later 821 Amendment", [DE 147 at 6], is left completely unexplained and is therefore underdeveloped and waived.

### III.  Witness Credibility and Evidence Admissibility Arguments

In his fourth and fifth grounds for relief, Brown challenges the credibility of three witnesses at his trial: (1) Indiana State Police Officer Gerald Michalak, (2) Print Examiner Timothy Pycraft, and (3) FBI Special Agent Andrew Chonowski. The government first argues that these claims are procedurally defaulted because Brown did not raise them in his appeal to the Seventh Circuit.

"The failure to raise an issue on direct appeal generally bars a defendant from raising it later in a post-conviction proceeding." *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993). There is an exception to this rule "if the defendant can demonstrate cause for the procedural default as well as actual prejudice from the failure to appeal." *Id*. The Seventh Circuit has defined cause as "some impediment to making an argument." *Turner v. United States*, 693 F.3d 756, 758 (7th Cir. 2012). Another exception to that general rule are claims of ineffective assistance of counsel. *Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999) ("Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default."). Brown argues that the latter avenue for cause, ineffective assistance of counsel, explains his failure to appeal these witness credibility claims. As with his ineffective assistance of counsel claims above,

12

Brown offers no argument for how his counsel was deficient in failing to raise these arguments or how the failure to do so prejudiced him. But out of an abundance of caution, I proceed to the merits of Brown's arguments.

Concerning Indiana State Police Officer Gerald Michalak, Brown alleges issues with his identification as a suspect and references a "NCIC background that was questionably manifested by [Michalak] before any lab identifications were produced from ISP lab[.]" [DE 147 at 10.] Brown also argues Michalak has a history of credibility issues. [*Id.* at 41.] The government argues that investigators ran Brown's criminal history report after they pulled the license plate number for the suspect vehicle and determined it was registered to Brown's mother. [DE 165 at 13.] The government then waited until after it received a match for Brown's handprint from the ISP lab to file the complaint and arrest warrant on September 22, 2020. [*Id.*]

Brown's counsel questioned Michalak at trial about the misconduct incidents from 2006 and 2017 that Brown references in his motion. [DE 100 at 34–35.] This questioning was indeed brief, but the Court does not see how further examination of these disciplinary issues would have yielded a different outcome for Brown nor rendered Michalak's testimony inadmissible or wholly non-credible. As for the allegation concerning retrieving the plate number before ISP lab results, I will discuss this below as it relates to FBI Special Agent Andrew Chonowski.

I turn now to Print Examiner Timothy Pycraft, against whom Brown levies similar allegations as against Michalak. After Michalak collected various swabs and "latent lifts" for ridge detail (the unique patterns on fingerprints, palms, feet, etc.),

Michalak submitted the evidence to the Indiana State Police lab in Lowell, Indiana. [DE 100 at 13–14.] Pycraft then received and reviewed the prints at the ISP lab. [DE 101 at 14.] Pycraft compared the palm print recovered from the bank and ran it through the ISP Automated Fingerprint Identification System ("AFIS"). Ultimately, Pycraft was able to match four fingers and a palm print as Brown's prints. [*Id.* at 24.] Attorney Boyles cross-examined Pycraft at length about his methods, the shortfalls of print collection and analysis, and possible confirmation bias. [*Id.* at 25–33.] Pycraft's analysis appears thorough, and it was reviewed by four other individuals. [*Id.* 17.] I see no error in Pycraft's analysis of Brown's prints, nor do I find any constitutional inadequacy of Attorney Boyles' examination of the same.

Finally, Brown alleges a variety of issues with FBI Special Agent Andrew Chonowski's testimony. First, Brown points to Chonowski's grand jury testimony to reiterate the alleged error concerning running Brown's criminal background prior to the ISP lab's conclusions on the prints collected from the bank. Brown includes what he represents are notes from Chonowski's grand jury testimony. [DE 147 at 38.] Brown's attorney questioned Chonowski about the identification of the getaway vehicle at the bank, [DE 100 at 94–96], and he questioned the bank employee who reported seeing a grey Nissan Altima to police [DE 99 at 77–79.] Not mentioned by Brown is that Griffith Police Officer Robert Carney was the one who utilized a license plate reader database to locate the car that matched the description given by the bank employee. [*Id.* at 134–142.] The Court does not see how this sequence of events presents an evidentiary error. Likewise, Attorney Boyles questioned Chonowski and other government witnesses at

length about his grand jury testimony and the lack of other evidence tying Brown to the crime scene such as a positive identification of Brown by a bank employee. The Court again sees no ineffective assistance by Brown's attorney in questioning the government's theory of the case presented at trial.

### IV.  5th Amendment / Identification Argument

In his sixth stated ground for relief, Brown brings up a chain of custody dispute concerning cell phones collected from him during his arrest. This issue was explored extensively by Brown's counsel at trial, and he presents no argument for how his appellate counsel was ineffective in failing to raise the issue on appeal. When FBI Special Agent Andrew Chonowski and Detective Gootee arrested Brown on September 23, 2020, he had several cell phones in his possession. [DE 100 at 71.] Chonowski testified that he and Gootee put the cell phones (along with other items) in evidence bags that Chonowski had retrieved from his car. [*Id.* at 72.] Chonowski testified that the chain of custody forms for the cell phones listed himself as the seizing individual, a transfer of custody to Gootee, a transfer of custody from Gootee to Task Force Officer Chnupa, and then a transfer of custody back to Chonowski two days later. [*Id.* at 73–74.]

At this point in the trial, Brown's counsel Attorney Boyles objected to the chain of custody for the cellphones. [*Id.* at 75.] In response, the government questioned Chonowski, who testified that Chnupa transported the cell phones to a task force office in Hobart, Indiana. [*Id.* at 75–76.] According to Chonowski, Chnupa did not have personal custody over the phones for the next two days because the phones remained secured at the task force office until Chnupa and Chonowski could meet up two days

later and complete the transfer of custody. [*Id.* at 76.] At trial, I found there was a sufficient chain of custody for the admission of the cell phones. [*Id.*] After reviewing the relevant trial transcript, I remain convinced that my ruling on chain of custody was correct, and Brown provides no substantive argument to the contrary.

In his seventh stated ground for relief, Brown argues the license plate readers that collected evidence in his case somehow violated the Illinois Biometric Information Privacy Act (commonly known as "BIPA"). Section 15(b) of BIPA "regulates the collection, use, and retention of a person's biometric identifiers or information." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 619 (7th Cir. 2020) (citing 740 ILCS 14/15(a)–(b)). As relevant here, BIPA defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. Brown does not explain the information law enforcement collected that he objects to, but I will assume based on his mention of a license plate reader that he refers to the license plate number on the car he drove. The collection of this information is not impacted by BIPA. Nor does Brown grapple with larger questions such as the relevance of BIPA to a federal prosecution for federal bank robbery.

Brown's next argument (contained in grounds eight and nine) relates to another evidentiary ruling. Brown's allegations are again light on details. As best the Court can tell, they concern the chain of events that led to the government's identification of Brown and his arrest. I've discussed above Brown's argument concerning alleged error in Pycraft's analysis of the latent prints collected at the bank. He also takes issue with the fact that the suspect vehicle was registered to his mother and not to him personally.

16

The government thoroughly presented evidence at trial on their identification and link of Brown to the vehicle registered to his mom. [DE 99 at 156–61.] For example, officers located Brown's driver's license in the car in question and found the keys to that car in his pocket during his arrest. [*Id.* at 147, 149.] This evidence of Brown's use of the car in question in combination with the matched prints and other evidence was properly admitted, capably objected to and explored by Brown's trial attorney, and were enough to convince the Court of Brown's guilt. Brown has raised no error with the evidence admitted at trial or his identification that warrants relief under § 2255.

V.   **Collection of Evidence Argument**

In his eleventh and final ground for relief, Brown primarily argues that the amount of money reported as stolen in the robbery was incorrect and claims "[i]f the dollar amount is incorrect, the indictment is defective." [DE 147 at 17.] But the government correctly notes that dollar amount is not an element of the bank robbery statute Brown was convicted of violating. The statute criminalizes robbery of "any property or money or any other thing of value" that belongs to or is in the custody or control of banks and other delineated financial institutions. 18 U.S.C. § 2113(a). Moreover, the Supreme Court has held that defects in an indictment do not deprive courts of the power to adjudicate cases, which shuts down Browns' argument even if he were able to prove a defect in his indictment. *See United States v. Cotton*, 535 U.S. 625, 630 (2002). Brown's other arguments in his eleventh articulated ground for relief concerning his identification and the processing of fingerprints and other evidence are subsumed by his earlier grounds for relief that I have discussed above.

**VI.     Rule 46 Motion**

Brown in August 2025 filed what he called a motion pursuant to Rule 46(c) of the Federal Rules of Criminal Procedure. Rule 46(c) notes that 18 U.S.C. § 3143 governs release of a defendant pending sentencing or appeal. Fed R. Crim. P. 46(c). Because the Seventh Circuit has already affirmed the imposition of Brown's sentence on appeal, this motion is denied.

**VII.    Motion Under 28 U.S.C. § 2284**

Brown also filed a motion he says is pursuant to 28 U.S.C. § 2284, which governs the unique circumstances in which panels of three district court judges are convened. This statute is inapplicable to Brown's request, the substance of which expresses his frustration at the time it has taken to rule on his § 2255 motion. The Court understands that frustration, but the time with which it took to rule on Brown's § 2255 motion was prolonged, in large part, by Brown's continual filing of frivolous motions, his appeals of the same, the multiple opportunities this Court provided Brown to file a traverse that responded to the government's arguments (which he never did), and the initial snafu concerning when Brown filed his § 2255. Brown's § 2255 motion has been ruled on, so this request is similarly denied.

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

18

2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Dalton v. Battaglia*, 402 F.3d 729, 738 (7th Cir. 2005) (citation omitted). For the reasons set forth above, I find no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c)(2). If Brown wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure Rule 22.

    **ACCORDINGLY**:

    Terrance Brown's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. §2255 [DE 140] is **DENIED** and a certificate of appealability is **DENIED**. Terrance Brown's Rule 46(c) Motion [DE 192] and Motion pursuant to 28 U.S.C. § 2284 [DE 197] are also **DENIED**.

    **SO ORDERED**.

    ENTERED: January 15, 2026.

                                         /s/ Philip P. Simon
                                        PHILIP P. SIMON, JUDGE
                                        UNITED STATES DISTRICT COURT